IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
TOLEDO DIVISION

FILED
JAN 15 2025
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF OHIO
TOLEDO

3:25 CV 00071

| | |
|---|---|
| JOMOKO GRAVES | Civil Action No. _____ |
| Plaintiff, | Judge __JUDGE HELMICK__ |
| GOLIATH GAMES, | Magistrate __MAG JUDGE CLAY__ |
| Defendants. | (JURY TRIAL DEMAND ENDORSED HEREON) |

**PLAINTIFF'S ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT**

NOW COMES the Plaintiff, Jomoko Graves (hereinafter "Plaintiff" or "Graves"), and pursuant to the U.S. Supreme Court's holding in TC Heartland LLC v. Kraft Foods Group Brands LLC, 137 S.Ct. 1514, 1517 (2017) (venue in patent infringement litigation), does hereby file this Original Complaint and demand for jury trial seeking relief from patent infringement of the claims of U.S. Patent No.10,500,518 ("the '518 patent") (hereinafter referred to as the "Patent-in-Suit") by the party-Defendant, Goliath Games, Corp.

**THE PARTIES**

1. Plaintiff Jomoko Graves is small IP start-up and/or sole proprietor company, bootstrapped, organized and existing under the laws of the State of Ohio, with its principal place of business at 410 Kopernik Ave., Toledo, Ohio 43607. This is the same

address associated with the '518 patent, which was granted on December 10, 2019 by the United States Patent and Trademark Office.

2. On information and belief, Defendant GOLIATH is a corporation existing in multiple countries. It's main headquarters in Vijzelpad 80, 8051 KR Hattem, The Netherlands, Telephone: +31 38-444-3093, info@goliathgames.nl. Goliath also has a North America headquarters existing under the laws of the State of Texas with a principal place of business located at 710 Presidential Dr., Ste 100, Richardson, Texas 75081, Telephone: 855-258-8214, www.goliath games.us.

On information and belief, Defendant sells or offers to sell the Goliath's Power Saber Energy Blade, certain components thereof, and products containing the same that infringe one or more claims of U.S. Patent No. 10,500,518 ("the '518 patent"). This product is imported, distributed, marketed and/or advertised, sold, offering for sale, sale after importation or other transfers by Goliath or their subsidiaries, related companies, and agents within Ohio and all throughout the United States. Including in this judicial district, and introduces products and services that perform infringing methods or processes into the stream of commerce knowing that they would be sold in Ohio and this judicial district. Defendant can be served with process through their registered agent and/or North America headquarters at 710 Presidential Dr., Ste 100, Richardson, Texas 75081, at its place of business, or anywhere else it may be found.

## II. JURISDICTION AND VENUE

3. This Court has original subject-matter jurisdiction over the entire action pursuant to 28 U.S.C. §§ 1331 and 1338(a) because Plaintiff's claim arises under an Act of Congress relating to patents, namely, 35 U.S.C. § 271.

4. This Court has personal jurisdiction over Defendant because: (i) Defendant is present within or has minimum contacts within the State of Ohio and this judicial district; (ii) Defendant has purposefully availed itself of the privileges of conducting business in the State of Ohio and in this judicial district; and (iii) Plaintiff's cause of action arises directly from Defendant's business contacts and other activities in the State of Ohio and in this judicial district. The Goliath's Power Saber Energy Blade, certain components thereof, and products containing the same that infringe one or more claims of U.S. Patent No. 10,500,518 ("the '518 Patent") is being sold or offered for sale in Toledo, Ohio and/or cities in and throughout Ohio. (See copy of purchase receipt and boxed Goliath's Power Saber Energy Blade from Walmart, Toledo, Ohio included as Exhibit A and part of this complaint).

5. Venue is proper in this district under 28 U.S.C. §§ 1391(b) and 1400(b). Defendant has committed acts of infringement and has regular and established places of distribution, retail space and sales in this District. Further, venue is proper because Defendant conducts substantial business in this forum, directly or through intermediaries, including: (i) at least a portion of the infringements alleged herein; and (ii) regularly doing or soliciting business, engaging in other persistent courses of conduct and/or deriving substantial revenue from the Goliath's Power Saber Energy

Blade, certain components thereof, and products containing the same that infringe one or more claims of U.S. Patent No. 10,500,518 ("the '518 patent"). Essentially, goods that are being provided to individuals in Ohio and this District. See International Shoe Co. v. Washington 326 U.S. 310 (1945), World-Wide Volkswagen Corp. v. Woodson 444 U.S. 286 (1980), J. McIntyre Machinery, Ltd. v. Nicastro 564 U.S. 873 (2011). Also see Bristol-Myers Squibb Co. v. Superior Court of California 137 S. Ct. 1773 (2017): This recent Supreme Court case further clarified the "relatedness" requirement, emphasizing that the defendant's contacts with the forum state must be related to the plaintiff's claims.

General Principles:

 * Purposeful Availment: The defendant must have purposefully availed themselves of the privilege of conducting activities within the forum state. This can include:

   * Direct Sales: Selling products directly to customers within the state.

   * Distribution Networks: Using distributors or retailers within the state.

   * Advertising: Targeting advertising campaigns to residents of the state.

   * Websites: Maintaining an interactive website that is accessible to residents of the state.

 * Foreseeability: It must be foreseeable that the defendant's actions could subject them to suit in the forum state.

Diversity Jurisdiction: This Court also has jurisdiction over this matter pursuant to 28 U.S.C. § 1332, as the parties are citizens of different states. Plaintiff, Graves, is a citizen of the State of Ohio. Defendant, Goliath, is a corporation organized and existing under

the laws of the State of Texas; its principal place of business in Richardson, Texas. Therefore, making the corporation a citizen of the State of Texas for diversity purposes. The amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

**III. INFRINGEMENT - CLAIM NO. 1 - Infringement of the '518 Patent**

6. On December 10, 2019, U.S. Patent No. 10,500,518 ("the '518 patent", included as Exhibit B and part of this complaint) entitled "Toy Retractable Light Saber" was duly and legally issued by the U.S. Patent and Trademark Office. Plaintiff is the inventor and assignee of the '518 patent technology.

7. The '518 patent relates to a science fiction toy retractable lightsaber that is divided into a hilt and blade, and may also be used as a signaling device, or illumination marker. The device utilizes the principles of telescopic series of the lightsaber's blade by using a motor and a driving mechanism known as a telescoping rotating shaft hidden within the hilt; these are the core and/or limit element, and without them the device would not function. There's also a light source within the hilt that sends a beam of light into a non-opaque tube along its axis as the blade is extended. The elongated tube also known as the blade is attached to the telescoping rotating shaft via a corresponding threaded shaft mechanism that extends out in at least three telescopic sections. This same combination allows it to retract back into the hilt of the hollow structure of the device to be unseen. In addition, a sound board may be added to transmit sound while in use or play.

8. Defendant infringes one or more claims of U.S. Patent No. 10,500,518 ("the '518 patent") by: (1) manufacturing, using, selling, or offering for sale certain components thereof; and (2) manufacturing and/or selling products containing such components. This infringement occurs both literally and/or under the doctrine of equivalents, and it is the obligation of the Court and Reasonable Jurist to answer the questions of law. See Markman v. Westview Instruments, Inc., 517 U.S. 370 (1996). Where the Court clarified that the interpretation of patent claims is a matter of law for the court to decide with respect to literal infringement. Claim construction is a matter of law and the court's role in construing claims is analogous to its role in interpreting legal documents. What's more, in Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co., 535 U.S. 722, 731, 122 S.Ct. 1831, 152 L.Ed.2d 944 (2002). Petter Invs., Inc. v. Hydro Eng'g, Inc., No. 2:14-CV-00045, 2015 WL 4067758, at *2 (D. Utah June 30, 2015) Supreme Court of the United States holds that: For a device to infringe under the Doctrine of Equivalents, there must exist only "insubstantial" differences between the accused device and the patent claim(s). WarnerJenkinson Co. v. Hilton Davis Chem. Co., 520 U.S. 17, 39–40, 117 S.Ct. 1040, 137 L.Ed.2d 146 (1997). Infringement maybe found under the Doctrine of Equivalents where the accused device infringes performs substantially the same function, in substantially the same way, to yield substantially the same result as the patented invention. Graver Tank & Mfg. Co. v. Linde Air Prods. Co., 339 U.S. 605, 608, 70 S.Ct. 854, 94 L.Ed. 1097 (1950). The Doctrine of Equivalents prevents infringement via "simple acts of copying" or "[u]nimportant and insubstantial substitutes for certain elements." Further, Warner-Jenkinson Co. v. Hilton Davis Chemical Co., 520 U.S. 17

(1997): This landmark Supreme Court case reaffirmed that the jury is the primary fact-finder in patent infringement cases, including those involving the doctrine of equivalents. Wherefore, in light of the aforementioned, it is asserted the Defendant's actions directly enabled the use of the technology or inventions claimed in the '518 patent, resulting in their commercial exploitation and generating monetary and commercial benefits for Defendant.

9. Support for the allegations of infringement may be found in the Claims Chart attached as Exhibit C. These allegations of infringement are preliminary and are therefore subject to change.

10. Defendant has caused Plaintiff damage by direct infringement of the claims of the '518 patent. The charted element claims are directed towards the elements of Defendant's Goliath Power Saber and/or the U.S. patent 11980827 that are used, made, offered to sell, or sold without permission by Defendant, its agents or distributors to customers.

11. Defendant further controls its customers performance of the claimed elements by providing the infringing products, certain components thereof, and products containing the same that infringe one or more claims of the '518 patent.

Support of this assertion:

https://www.google.com/search?q=goliath+power+saber+walmart&oq=Goliath+power+Saber+wal&gs_lcrp=EgZjaHJvbWUqBwgBECEYoAEyBggAEEUYOTIHCAEQIRigATIHCAIQIRigATIHCAMQIRigATIHCAQQIRigATIHCAUQIRigATIHCAYQIRiPAjIHCAcQIRiPAtIBCTEzMDE2ajBqN6gCFLACAQ&client=ms-android-motorola-rvo3&sourceid=chrome-mobile&ie=UTF-8

7

12. Defendant further controls the nature and timing of infringement as evidenced in the above link.

**IV. INVALIDITY- CLAIM NO. 2 - US Patent 11980827 invalid under 35 U.S.C. §§ 102 and 103**

13. Prior art is well established with the U.S. Patent No. 10,500,518 entitled " Toy Retractable Light Saber" and duly and legally issued December 10, 2019. The '518 Patent issued from U.S. Patent Application No. 20190022542A, published on January 24, 2019 and claim priority to Provisional Application No. 15/657,314, filed on July 24, 2017. The '518 Patent is subject to a patent term limit and expires on July 24, 2037.

14. In layman's terms, the '518 patent technology utilizes a motor, a threaded internal telescoping rotating shaft in a driving relationship with said motor, threaded corresponding shaft mechanisms that extend and retract when said threaded internal telescoping rotating shaft turns one way or another. The shaft mechanisms attach to hollow tubes that are known as the illuminating blade, which retracts into the hilt, and extends from within the hilt. The hollow tubes are in a telescopic series and work in conjunction with the internal driving mechanism. The hollow tubes are pushed together and friction holds them together and act as one unit. In addition, there's another embodiment that enables the climb of shaft mechanisms called the guide shaft. (See Exhibit B, the claims 1-3 and specification at Brief Summary of the Invention; see Exhibit D, pictures of prototype, video link demonstrations of early on prototype and R&D design iterations, side-by-side similarities in asserted patent and accused product by photos).

15. In layman's terms, the 11980827 patent technology utilizes a motor, a threaded internal telescoping rotating shaft (a threaded spinal) in a driving relationship with said motor, threaded corresponding shaft mechanisms (nuts) that extend and retract when said threaded internal telescoping rotating shaft turns one way or another. The shaft mechanisms (nuts) attach to hollow tubes that are known as the illuminating blade, which retracts into the hilt, and extends from within the hilt. The hollow tubes are in a telescopic series and work in conjunction with the internal driving mechanism. The hollow tubes are pushed together and friction holds them together and act as one unit. In addition, there's another embodiment that enables the climb of shaft mechanisms known as a guide shaft. (See US patent 11980827 included as Exhibit E).

16. Intrinsic Evidence of the prior art of the '518 patent technology invalidates the later 11980827 patent pursuant to 35 U.S.C. §§ 102 and 103, which conveys that a patent can be considered invalid if it falls within the scope outlined in Title 35. U.S.C. sections 102 and 103. Anticipation and lack of novelty: The invention was already known or publicly available before the patent application was filed (prior art). The names of some elements within both patents are different, the configurations differ insubstantially, and the "function -way- results" are the same.

Evidence indicates the differences are insubstantial. What's more, the intrinsic evidence indicates there's clear and convincing obviousness: to wit, the invention would have been obvious to someone skilled in the art at the time of the [later] invention. See KSR International Co. v. Teleflex Inc. (2007): This landmark case significantly impacted obviousness analysis. The Court emphasized that the obviousness inquiry should not

9

be reduced to a rigid checklist or require any single motivation. Instead, it should focus on whether the "COMBINATION OF PRIOR ART ELEMENTS" [emphasis added] would have been obvious to a person of ordinary skill in the art. Therefore, If a person of ordinary skill in the art can implement a "PREDICTABLE VARIATION" [emphasis added], and would see the benefit of doing so, §103 likely bars its patentability. In light of the prior art of the '518 patent, the evidence is clear that the later patent lacked novelty.

17. Extrinsic Evidence relevant to this claim will reference evidence outside the patent document, such as:

   * Expert testimony: Testimony from experts in the relevant field to help explain technical terms or concepts.

   * Dictionary definitions: Definitions of terms used in the claims.

   * Technical treatises: Books or articles that are long standing that explain the underlying science or technology.

   * Prior art: Existing technology that may be relevant to the interpretation of the claims and similar prior art in other fields of study.

18. A federal court has the jurisdiction to invalidate a patent. Moreover, U.S. federal courts have exclusive jurisdiction over patent matters, including the power to invalidate patents. This jurisdiction is granted by 28 U.S.C. § 1338 and on the grounds set forth in Title 35. U.S.C. §§ 102 and 103. These authorities were granted to Federal Courts for several reasons: (1) Expertise, (2) Uniformity, (3) Checks and Balances, (4) Public Interest.

19. The USPTO examines patent applications and grants patents. The USPTO examination process, while rigorous, is not infallible. Multiple factors play a role in the outcome of decisions made in good faith, but were incorrect. (1) Human error, (2) Workload, (3) Complexity, (4) Overlooked prior art, (5) Quotas and time constraints, (6) Incorrect legal analysis.These types of circumstances are not uncommon, which is why the USPTO with respect to PTAB has instituted multiple vehicles found in title 35 U.S.C. §§ 302, 311-318, 321-329 to rectify potential errors.

**V. CONDITIONS PRECEDENT**

20. Plaintiff is a small sole proprietor IP holding that invents, patents, distributes, publishes, markets and sells and offers to license it's own products. The Plaintiff is a small bootstrap start up and isn't as successful as desired in these efforts. The Plaintiff has never sold the product or components thereof, of the '518 patent. Upon information and belief, despite his efforts, the Plaintiff is a non-practicing entity ("NPE"), with no products licensed or sold to mark as successful. Plaintiff has pled all statutory requirements to obtain pre-suit damages. Further, all conditions precedent to recovery are met. Under the rule of reason analysis, Plaintiff has taken reasonable steps to ensure marking by any licensee producing a patented article.

21. Plaintiff had even taken the extra step to reach out to the Defendant to avoid such pre-suit damages. (See email communications bundled and listed as Exhibit F, included in this complaint).

22. The Plaintiff and Defendant have not entered into, or negotiated in the face of continued litigation, a licensing agreement. Plaintiff believes and asserts there is

infringement of the '518 patent; no defendant entity agreed that there is infringing of the '518 patent.

## VI. JURY DEMAND

Plaintiff hereby requests a trial by jury on issues so triable by right.

## VII. PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief as follows:

a. enter judgment that Defendant has infringed the claims of the '518 patent;

b. enter judgment that the 11980827 patent is invalid pursuant to 35 U.S.C. §§ 102 and 103;

c. award Plaintiff damages in an amount sufficient to compensate it for Defendant's infringement of the Patent-in-Suit in an amount no less than a reasonable royalty or lost profits, together with pre-judgment and post-judgment interest and costs under 35 U.S.C. § 284;

d. award Plaintiff an accounting for acts of infringement not presented at trial and an award by the Court of additional treble damage for any such acts of willful infringement;

e. declare this case to be "exceptional" under 35 U.S.C. § 285 and award Plaintiff its attorneys' fees, expenses, and costs incurred in this action; and,

f. award Plaintiff such other and further relief in law or equity as the Court deems just and proper.

Sincerely and most respectfully submitted,

Jomoko Graves, In Pro Se
410 Kopernik Ave.
Toledo, Ohio 43607
Tel. 419.690.2432
Email: jomokograves@yahoo.com

13